IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WANDA SIRKO, | * |
| v. | * Case No.: 1:09-cv-552 |
| TOWN COUNCIL OF CENTREVILLE | * |

MEMORANDUM

Now pending before the court is a Motion for Summary Judgment filed by Defendant, Town Council of Centreville ("Town of Centreville") against Plaintiff Wanda Sirko ("Plaintiff"). Plaintiff commenced the instant action to recover damages stemming from a tragic motor vehicle accident in which Plaintiff's father, John Andrews, was killed. Plaintiff contends that the Town of Centreville is responsible for the Death of John Andrews because the negligent pursuit of Officer Marc Whaley ("Officer Whaley") caused the fatal crash. The issues having fully been briefed, no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the following reasons, I will grant the Town of Centreville's Motion for Summary Judgment.

**Background[1]**

On August 23, 2007, Daniel Savage ("Savage") consumed numerous alcoholic beverages, walked to a nearby store, and stole a 1999 GMC Yukon from the parking lot. (Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 2, Ex. 1, Dep. of Daniel Savage at 26-

---

[1] The facts are presented in the light most favorable to the Plaintiff, the non-moving party. *See Lee v. York County Sch. Div.*, 484 F.3d 687, 693 (4th Cir. 2007).

1

32.) Officer Whaley spotted Savage after receiving a bulletin to law enforcement to be on the lookout for the stolen vehicle. (*Id.* at 2, Ex. 2, Dep. of Marc Whaley at 15.) Whaley then commenced pursuit of Savage. After approximately 1.5 miles (*Id.*, at 2, Ex., 3A, 3B.), Savage drove the Yukon through a red light at a speed of approximately 50 M.P.H. and struck and killed John Andrews. (Pl.'s Mem., Ex. 3, Dep. of Daniel Savage at 56.)

The Centreville Police Department Administrative and Patrol Manual ("the Police Manual") establishes factors which any officer must consider when determining whether to initiate or maintain a police pursuit. (*Id.*, Ex. 8, Police Manual at 22-III-5.) The factors include:

1. The nature and seriousness of the offense
2. The speed involved
3. Population density, both vehicular and pedestrian
4. Performance capabilities of the pursuit vehicle and vehicle being pursued
5. The officer's knowledge of the area
6. Road, weather, visibility and other environmental conditions
7. Whether the identity of the suspect is known and apprehension can be made later
8. Whether the offender poses an immediate threat to public safety.

(*Id.*, Ex. 8, Police Manual at 22-III-5.)

Whaley commenced his pursuit after witnessing a vehicle matching the description of a stolen GMC Yukon drive passed his parked police cruiser. (Def.'s Mem. at 3.) Whaley then pulled out into the roadway to attempt to assess whether the vehicle was in fact the stolen Yukon. (*Id.*, Ex. 2, Dep. of Marc Whaley at 23-24.) Savage, the operator of the Yukon, increased his speed, passed two vehicles on the right shoulder, drove through a stop sign and turned south onto Maryland Route 213 toward the Town of Centreville. (*Id.*, Ex. 2, Dep. of Marc Whaley at 23-80.) Whaley responded by activating his emergency lights and sirens and attempting to follow the Yukon. (*Id.*, Ex. 2, Dep. of Marc Whaley at 28-30, 37.)

Whaley pursued Savage from a distance. At times, Savage was not within Whaley's view (*Id.*, Ex. 2 at 31-32), and Whaley not within Savage's view. (Pl.'s Mem., Ex. 3, Dep. of

Daniel Savage at 54.) The record is not exactly clear as to how close Whaley was following Savage at the time of the collision, although it is apparent that Whaley remained at some distance. Witnesses to the collision testified that the first officer arrived on the scene anywhere from 10 seconds to 45 seconds from the time of the collision. (*See, e.g.*, *Id*., Ex. 2, Aff. of Stephen Elliot O'Brey at ¶2; Def.'s Mem. Ex. 3, Dep. of Daniel Savage at 56.) Savage is not certain whether or not he could see a police cruiser in his rear view mirror just prior to the collision. (Pl.'s Mem., Ex. 3, Dep. of Daniel Savage at 56.) Officer Whaley claims that he lost site of the vehicle after commencing pursuit and did not see it again until arriving on the scene of the collision. (Def.'s Mem., Ex. 3, Dep. of Marc Whaley at 54.)

Initially, Whaley and Savage were driving in a rural area on Maryland Route 213. (*Id*., at 3, Ex. 3A and 3B.) The speed limit on Route 213 is 40 M.P.H. (Pl.'s Mem., Ex. 3, Dep. of Daniel Savage at 39.) The speed of the pursuit averaged 50-55 M.P.H. (*Id.*, Ex. 3, Dep. of Daniel Savage at 113; Def.'s Mem., Ex. 2, Dep. of Marc Whaley at 31.) After approximately 1.5 miles, Savage led officer Whaley into the town of Centreville. At this point, the area became more congested with pedestrian and vehicular traffic, and the speed limit dropped to 25 M.P.H. (Def.'s Mem., Ex. 3, Dep. of Marc Whaley at 40.) Shortly after entering the town limits, Savage struck and killed Andrews.

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The Court is required to "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and the weight to be accorded particular evidence." *Mason v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (citations omitted). However, a party may not rely on mere

3

speculation to create a genuine issue of material fact. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330-331 (4th Cir. 1998). In response to a motion for summary judgment, the non-moving party must show evidence of specific facts from which the finder of fact could reasonably return a verdict in his or her favor. *Anderson*, 477 U.S. at 252. If the non-moving party fails to establish a genuine dispute as to material fact, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**Analysis**

Plaintiffs contend that Officer Whaley failed to exercise reasonable care in pursuing Savage and that his negligence proximately caused Savage to collide with, and kill, Andrews. Viewing the allegations in light most favorable to Plaintiff, I conclude, as a matter of law, that Whaley's conduct did not amount to negligence. Plaintiffs have identified insufficient aggravating circumstances to indicate that this was anything other than a routine police pursuit of a suspected criminal.

Under Maryland statutory and common law, a police officer, "in connection with his operation of a police car, owes others on the roadway a duty of due care." *Boyer v. State*, 594 A.2d 121, 134 (Md. 1991); Md. Code. Ann. Transp. Art. § 21-106(d) (nothing that operators of emergency vehicles are not relieved "from the duty to drive with due regard for the safety of all persons"). More specifically, police officers "owe a duty of care to a plaintiff injured by suspected criminals fleeing the officers if the officers set in motion a chain of events which they knew or should have known would lead to . . . [the plaintiff's] injury by the criminals or by the police effort to stop the vehicle." *Boyer*, 594 A.2d at 143 (internal citations omitted). Therefore, a police officer owes a bystander a duty of due care "if he placed them within a zone of danger

4

without reasonable justification and if he set in motion a chain of events which [he] knew or should have known would lead to" the plaintiff's injuries. *Id.* at 135.

When analyzing a police officer's past conduct, the officer's actions should not be judged in hindsight, but according to "how a reasonably prudent police officer would respond faced with the same difficult emergency situation." *Id.* at 137. Thus, the mere engagement in the high speed chase of a suspect which leads to the injury of a bystander does not constitute a prima facie breach of an officer's duty of care to a third party bystander. *Id.* (citing *Lee v. City of Omaha*, 209 Neb. 345, 351 (1981)). Instead, where an officer is negligent there are generally "aggravating circumstances." *Id.* at 137. In *Keesling v. State*, 420 A.2d 261, 267 (1980), the Court of Appeals reversed a grant of summary judgment for the state, concluding that a jury could reasonably find police officers negligent for assisting criminals in commandeering the plaintiff's car. The officers were being forced at gunpoint to transport the prisoners in their police cruiser and the officers suggested that the criminal escape in the plaintiff's car. *Id.* at 263. The officers then pulled over the plaintiff's car using the cruiser's emergency equipment. *Id.* Other courts have found negligence when officers breach police department policies or guidelines. In *Biscoe v. Arlington County*, 738 F.2d 1352, 1355 (D.C. Cir. 1984), the court affirmed a finding of negligence where an officer failed to exercise proper arrest protocols, permitted a suspect to escape, and then pursued the suspect over unfamiliar city streets in a frantic high speed chase through downtown Washington, D.C. at speeds of 70-80 M.P.H.

Considered in light of the forgoing standard, Officer Whaley's pursuit of Savage was not negligent. The pursuit commenced after Officer Whaley spotted Savage in a Yukon matching the description of a recently stolen vehicle and Whaley pulled his cruiser onto the road in an attempt to identify Savage's license plate number. (Def.'s Mem., Ex. 2 at 22-25.) Savage then

sped past two cars on the right shoulder and failed to stop at a stop sign. Officer Whaley gave chase at a maximum speed of 55 M.P.H. in a rural area 1.5 miles north of Centerville where the posted speed limit was 40 M.P.H. Neither Savage nor Whaley exceeded 55 M.P.H. (Pl.'s Mem., Ex. 3, Dep. of Daniel Savage at 113; Def.'s Mem., Ex. 2, Dep. of Marc Whaley at 31.) Officer Whaley's emergency equipment was activated during the pursuit. Once he reached the town of Centreville, Officer Whaley dropped his speed to aound 40 M.P.H. (Def.'s Mem., Ex. 2 at 36.) The entire pursuit lasted approximately 4 minutes. (*Id*., Ex. 2, Dep. of Marc Whaley at 48.)

There are insufficient aggravating factors in these facts upon which a reasonable jury could conclude that Officer Whaley "set in motion a chain of events which [he] knew or should have known would lead" to the injury of bystanders. *Boyer*, 594 A.2d at 135. At the outset of the pursuit there were no objective indictors that a pursuit would be unreasonably dangerous to the public. Throughout the course of the pursuit, Officer Whaley's conduct was reasonable. His speed was not excessive. *Cf. Biscoe*, 738 F.2d 1352 (negligent to pursue at 70-80 M.P.H. on an urban city block). He activated his emergency equipment and was familiar with the terrain. (Def.'s Mem., Ex. 2 at 37 and 41.) The pursuit lasted only four minutes. It is noteworthy that had Officer Whaley failed to pursue Savage he likely would have been in violation of the general policy stipulated in the Centreville Police Manual: "It is the policy of the CPD to pursue suspects, particularly those whose identity is unknown and the crimes warrant such, to effect an arrest." (Pl.'s Mem., Ex. 8, Police Manual at 22-III-3.) Ultimately, there is no reasonable basis upon which a jury could conclude that Officer Whaley was negligent in his pursuit of Savage. [2]

---

[2] Plaintiffs have introduced an affidavit of an expert witness, Geoff Alpert, which does not alter this conclusion. Alpert's affidavit concludes that "If Cpl. Whaley had terminated his pursuit, it is more likely than not that Mr. Savage would have slowed down and this crash would have been avoided." (Pl.'s Mem., Ex. 10, Affd. of Geoff Alpert ¶5.) This conclusion does not address the legal question of Officer Whaley's negligence. As discussed above, an officer owes a duty of due care to third parties if "he placed them within a zone of danger without reasonable justification *and* if he set in motion a chain of events which he knew or should have known would lead

A different conclusion would place upon the police a duty to protect each and every member of the public from suspected criminals. The slightest error by an officer would become the subject of litigation. *See Jones v. Maryland-National Capital Park & Planning Comm'n*, 571 A.2d 859, 866 (Md. Ct. Spec. App. 1990). "Were that to occur, we would in effect be placing handcuffs on the officer, not the culprits." *Id.* at 869 (citing *Boyer v. State,* 560 A.2d 48, 50.)

It is undeniable that Officer Whaley's pursuit of Savage ended in a terrible tragedy. But a police officer's decisions must be evaluated from the time the decisions were made, not by hindsight. For the foregoing reasons I conclude that there is no dispute of material fact as to the reasonableness of Officer Whaley's actions, and therefore, the Town of Centreville is entitled to judgment as a matter of law. A separate order to that effect is being entered herewith.

Date: September 2, 2010  /s/_____
　　　　　　　　　　　　　　J. Frederick Motz
　　　　　　　　　　　　　　United States District Judge

---

to" a third party's injury. *Boyer*, 594 A.2d at 135 (emphasis added and internal quotations omitted) (citing *Keesling*, 420 A.2d at 267. Therefore, increased risk does not necessitate a finding of negligence in a police pursuit.

　　I also believe that Alpert's testimony is inadmissible under Fed. R. Civ. P. 56(e) and Fed. R. Evid. 704. An expert opinion that is wholly conclusory and devoid of reasoning is inadmissible. Here, Aplert has rendered conclusions without providing his underlying reasoning or justification. To be admissible, an expert opinion must contain more than "it is so because I say it is so." *Holesapple v. Barrett,* 5 Fed.Appx. 177, 180 (4th Cir. 2001); *see also Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion-i.e, testimony that does little more than tell the jury what result to reach-is properly excludable under the Rules.").